**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **WILLIAM SCISM, KAREN SCISM & GC OF VINELAND, LLC,** | |
| Third-Party Plaintiffs, | Civil Action No. 18-12879 (ES) (CLW) |
| v. | OPINION |
| **GOLDEN CORRAL CORPORATION and GOLDEN CORRAL FRANCHISING SYSTEM, INC.,** | |
| Third-Party Defendants. | |

**SALAS, DISTRICT JUDGE**

Before the Court is Third-Party Defendant Golden Corral Corporation's ("Defendant's")[1] motion to dismiss the Amended Third-Party Complaint (D.E. No. 20 ("Compl." or the "Complaint") at 6–22) of Third-Party Plaintiffs William Scism, Karen Scism, and GC of Vineland, LLC (collectively, "Plaintiffs"). (D.E. No. 22). The Court has considered the parties' submissions,[2] and decides the motion without oral argument. *See* L. Civ. R. 78.1(b). For the below reasons, the Court GRANTS-in-part the motion to dismiss.

## I. Background

The Court will "set out facts as they appear" in the Complaint. *See Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012). In early 2006, Plaintiffs expressed an interest in entering into a

---

[1] Golden Corral Corporation and Golden Corral Franchising System, Inc., are both named as Third-Party Defendants in this action. The latter is a subsidiary of the former, and the two entities operated in conjunction throughout their proceedings with Plaintiffs. (*See* D.E. No. 20, Ex. B; D.E No. 27 at 8). Thus the Court refers only to one "Defendant."

[2] (*See* D.E. Nos. 22-1 ("Mov. Br."), 26 ("Opp. Br.") & 27).

franchise agreement with Defendant, a restaurant chain headquartered in North Carolina. (*See* Compl. ¶¶ 63 & 65). Plaintiffs were informed by Defendant that they were to be granted a franchise territory within Mercer County, New Jersey, but Plaintiffs were unable to find a suitable location to build a restaurant within that area. (*Id*. ¶¶ 65–66). Defendant instead offered Plaintiffs the location of 3624 S. Delsea Drive, Vineland, New Jersey. (*Id.* ¶ 67). Although this location was not within the original franchise territory Plaintiffs had been presented, Plaintiffs accepted the offer. (*See id.* ¶¶ 68 & 71). Plaintiffs and Defendant executed a franchise agreement on May 24, 2007. (Compl., Ex. B (the "Franchise Agreement")).[3] In a separate agreement dated April 20, 2011, plaintiffs William and Karen Scism assigned the Franchise Agreement to plaintiff GC of Vineland, LLC, a limited liability company of which they are members. (Compl., Ex. C (the "Assignment Agreement")). Defendant "consented to" the Assignment Agreement. (*Id.*). And the Assignment Agreement contained a release of liability described below.

Prior to the Assignment Agreement, plaintiffs William and Karen Scism took out a loan from First Chatham Bank. (D.E. No. 12-1 at 2).[4] This loan was eventually assigned to Bank United, NA ("Bank United"), the main plaintiff in this case. (*Id.*). Plaintiffs ultimately closed their franchise restaurant and were unable to repay their loan. (*Id.*). After Bank United initiated an action against Plaintiffs to recover the loan value, Plaintiffs filed a third-party complaint against Defendant. (D.E. No. 12-3 at 9). Following the dismissal of First Chatham Bank from the case, Plaintiffs were granted leave (*see* D.E. No. 19) to file the Complaint (*see* D.E. No. 20).

---

[3] When considering a motion to dismiss, the Court is permitted to consider exhibits integral to the plaintiffs' Complaint. *See, e.g.*, *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[4] First Chatham Bank was originally named as a third-party defendant but has since been voluntarily dismissed from this case. (D.E. No. 8).

The Complaint advances twelve Counts against Defendant. (*See generally* Compl.). Defendant has filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. No. 22).

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." But to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). A complaint cannot suffice "if it tenders [only] 'naked assertion[s]' devoid of 'further factual enhancement,'" because while Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

Pursuant to the pleading regime established by *Twombly* and *Iqbal*, the Court of Appeals has promulgated a three-pronged test to determine the sufficiency of a complaint. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court considers "the elements a Plaintiff must plead to state a claim." *Id.* (internal citations omitted). Second, the Court distinguishes the facts from the legal conclusions contained in the complaint, as the latter "are not entitled to an assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). That is, a complaint's "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, cannot "nudge[] [a plaintiff's] claims across the line from conceivable to plausible,"

*Twombly*, 550 U.S. at 570. Finally, the Court considers the complaint's remaining well-pleaded factual allegations and "determine[s] whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 130 (quoting *Iqbal*, 556 U.S. at 679).

Throughout this process, the Court is "required to accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *See, e.g.*, *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 266 (3d Cir. 2016). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. Analysis

### A. Counts One through Five

Defendant argues that all of Plaintiffs' claims are barred by the Assignment Agreement. (Mov. Br. at 2–3). In the Assignment Agreement, plaintiffs William and Katherine Scism "irrevocably remise[d], release[d] and forever discharge[d] . . . any and all claims, debts, liabilities, demands, obligations, costs, expenses, actions, and causes of action" they may have held against Defendant "arising out of or related to any matters . . . including but not limited to [the Franchise Agreement and Assignment Agreement] at any time prior to and including the date of the Assignment [Agreement]." (Assignment Agreement ¶ 7). Plaintiffs argue that this provision is invalid under the New Jersey Franchise Practices Act, N.J.S.A. § 56:10-1, *et seq.* (the "FPA") (Opp. Br. at 2–3), which forbids any franchisor from "requir[ing] a franchisee at the time of entering a franchise arrangement to assent to a release . . . which would relieve any person from

liability imposed by th[e] act," *see* N.J.S.A. § 56:10-7(a). Defendant correctly points out, however, that N.J.S.A. § 56:10-7(a) does not apply here. (*See* D.E. No. 27 at 1–2).

Again, the FPA bars *a franchisor* from "requir[ing] *a franchisee* at [the] time of entering into *a franchise arrangement* to assent to a release . . . which would relieve any person of liability imposed by [the FPA]." N.J.S.A. § 56:10-7(a) (emphases added). As an initial matter, it is not clear that "entering into a franchise arrangement" should be interpreted to apply to the Assignment Agreement. *See id.*; *see, e.g.*, *Red Roof Franchising, LLC v. Patel*, 877 F. Supp. 2d 124, 126 (D.N.J. 2012) (distinguishing a franchise arrangement and an assignment agreement). It is also not clear whether Defendant, as an entity that merely "consented to" the Assignment Agreement, "requir[ed]" a franchisee to do anything. *See* N.J.S.A. § 56:10-7(a).

But even if the Assignment Agreement fits within the literal language of the relevant definition, *see* N.J.S.A. § 56:10-3(a)—and Defendant "require[d]" a release of liability with it, *see* N.J.S.A. § 56:10-7(a)—the Assignment Agreement does not meet the conditions in N.J.S.A. § 56:10-7(a). More specifically, the Assignment Agreement does not "require *[the] franchisee* . . . to assent to a release," *see* N.J.S.A. § 56:10-7(a): *The franchisee* in the Assignment Agreement, if anyone, is GC of Vineland, LLC. (*See* Assignment Agreement ¶ 1 ("grant[ing], assign[ing] and convey[ing] all rights under the Franchise Agreement to [GC of Vineland, LLC]")); *see also* N.J.S.A. § 56:10-3(d) ("'Franchisee' means a person to whom a franchise is offered or granted.")). Yet the release in the Assignment Agreement applies *only to William and Katherine Scism*, who were no longer "franchisee[s]" because they "grant[ed], assign[ed] and convey[ed] *all rights under the Franchise Agreement*" *to GC of Vineland, LLC*. (*See* Assignment Agreement ¶ 1).[5]

---

[5] Plaintiffs alternatively assert that the Assignment Agreement "is illegal in its form pursuant to N.J.S.A. § 56:10-6." (Opp. Br. at 4). The apparent basis for this assertion is that N.J.S.A. § 56:10-6 "does not permit a carve-out in a transfer requiring the assignor to remain liable for the performance of the franchise agreement." (*See id.*). Plaintiffs do not explain why such a carve-out would be required and do not otherwise cite legal authority in support

When state law does not bar a release of liability—which, as suggested above, is the case here—such a release may be enforced on the parties to a franchise agreement. *See, e.g.*, *Williams v. Stone*, 109 F.3d 890, 896 (3d Cir. 1997) (ruling that a release of liability was valid and prevented a franchisee from bringing claims against a franchisor). Claims that are barred by such releases must be dismissed by the Court. *See id.*

Here, Counts One through Five fall within the scope of Assignment Agreement's release. More specifically, each of the first four Counts of the Complaint seeks damages for alleged "misrepresentations and/or material omissions related to the proposed franchise location." (*See, e.g.*, Compl. ¶¶ 75, 84, 87 & 90). The alleged misrepresentations or omissions, therefore, all occurred prior to the Assignment Agreement,[6] and they fall within the scope of the release that bars all claims "arising out of or related to any and all matters . . . at any time prior to and including the date of th[e] Assignment [Agreement]." (Assignment Agreement ¶ 7).

Count Five, for its part, requests "rescission or reformation" of "contracts," including the Franchise and Assignment Agreements, "executed . . . as a result of the fraud." (Compl. ¶¶ 96–97).[7] To the extent this claim challenges the Franchise Agreement, it is barred for the reasons discussed above; and to the extent this claim challenges the Assignment Agreement, it is conclusory, *see Iqbal*, 556 U.S. at 678, and fails to comply with Rule 9(b), *see United States v.*

---

of the proposition that the FPA prohibits "requiring the assignor to remain liable for the performance of the franchise agreement." (*See id.*). N.J.S.A. § 56:10-6 merely "describes circumstances for a franchisee's proper transfer of an existing franchise and a franchisor's proper rejection of a franchisee's proposed transfer." *See Maple Shade Motor Corp. v. Kia Motors Am., Inc.*, 260 F. App'x 517, 518 (3d Cir. 2008).

[6] To reiterate, the Franchise Agreement, which determined the location of the franchise, was executed on May 24, 2007, and the Assignment Agreement was executed on April 20, 2011. (*See* Compl. ¶ 71–72). Claims predating May 24, 2007, of course, are claims that arose "prior to . . . the date of th[e] Assignment [Agreement]," April 20, 2011. (*See* Assignment Agreement ¶ 7).

[7] Although Plaintiffs' language implies that additional contracts were entered as a result of fraud, neither the Complaint nor its exhibits allege an example of such an agreement. (*See generally* Compl.).

*Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016). Accordingly, Counts One through Five must be dismissed.

### B. Counts Six through Eight, Eleven, and Twelve

Defendant argues that Counts Six through Eight, Eleven, and Twelve must be dismissed because, as "threadbare" and conclusory assertions, they fail to state a claim. (*See* D.E. No. 27 at 8 & 15). Plaintiffs' only argument to the contrary, apparently, is that the Counts "incorporate all the allegations previously pled." (Opp. Br. at 13 & 20–21). But asserting that "[a]ll allegations in this pleading are incorporated as if set forth at length" (*see, e.g.*, Compl. ¶ 89) cannot "nudge[] [a] claim[] across the line from conceivable to plausible," *see Twombly*, 550 U.S. at 570, if the other allegations in the complaint are "devoid of 'further factual enhancement,'" *see Iqbal*, 556 U.S. at 678 (quoting *id.* at 556). Here, Plaintiffs' assertions in Counts Six through Eight, Eleven, and Twelve are textbook "the-defendant-unlawfully-harmed-me accusation[s]." *See id.*; (*see, e.g.*, Compl. ¶¶ 99 (asserting that Defendant "ha[s] committed a tort(s)" against Plaintiffs), 102 (asserting that Defendant "pursued a common plan or design to commit a tort(s)"), 106 (asserting that Defendant "entered into an agreement to inflict a wrong against or an injury upon" Plaintiffs), 121 (asserting that Defendant "engaged in conduct in bad faith") & 126 (asserting that Defendant's conduct "has unjustly enriched" it)).[8] And they are "devoid of 'further factual enhancement.'" *See Iqbal*, 556 U.S. at 678 (*Twombly*, 550 U.S. at 556); (*see also generally* Compl.). Accordingly, Counts Six through Eight, Eleven, and Twelve must also be dismissed.

---

[8] Although Count Twelve includes *some* additional factual basis (*see, e.g.*, Compl. ¶ 124 (alleging that Plaintiffs "have paid fees, including start-up fees and royalty fees")), Plaintiffs do not allege facts supporting the inference that "under [the] circumstances [it] would [be] unjust for [D]efendant to retain" the alleged fees. *See Read v. Profeta*, No. 15-2637, 2019 WL 2307285, at *31 (D.N.J. May 29, 2019). Moreover, it is not clear whether Plaintiffs could bring an unjust enrichment claim at all because "[q]uasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties." *See Mills v. Harrison Byck & Kasuri & Byck, LLC*, No. 19-14349, 2019 WL 3347169, at *5 (D.N.J. July 24, 2019) (citing *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000)).

### C. Count Nine

"[W]hen presenting a rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Here, Defendant contends that Count Nine is barred by New Jersey's six-year statute of limitations for breach of contract. (Mov. Br. at 9–10). In support of this argument, Defendant relies on reporting from "www.azcentral.com" and asserts, on that basis, that the alleged breach of contract must have occurred "sometime in September and October of 2011." (*See id.*). In resolving this motion to dismiss, however, the Court cannot consider reporting from "www.azcentral.com," *see Mayer*, 605 F.3d at 230, and "must credit the allegations of the complaint and not the defendant's responses when resolving conflicting allegations," *see Semerenko v. Cendant Corp.*, 223 F.3d 165, 181 (3d Cir. 2000). Therefore, the Court cannot dismiss Count 9 on that basis.

And although Defendant contends that "*[a]ll of the counts* fail" because of the Assignment Agreement (Mov. Br. at 1 (emphasis added)), Count 9 alleges breaches of contract that could have occurred post-Assignment Agreement (*see, e.g.*, Compl. ¶ 111 (alleging a failure to provide "continuing advisory assistance")). The Court must construe the alleged facts "in the light most favorable to the nonmovant," *McDermott*, 649 F. App'x at, 266; and "[i]t is sufficient for purposes of the motion to dismiss to find that Plaintiffs' claim[s] [are] not clearly precluded by the language of the contract," *see Marsala v. Dun & Bradstreet*, No. 10-0302, 2010 WL 11570249, at *1 (D.N.J. May 27, 2010). Therefore, the Court cannot dismiss Count 9 on this basis, either.

### D. Count Ten

Count Ten asserts that Defendant "imposed unreasonable standards of performance" in violation of N.J.S.A § 56:10-7(e) and provides numerous examples supported by factual

allegations. (*See* Compl. ¶¶ 116–17). This claim "is ill-suited for resolution on a motion to dismiss" but, "of course, the minimum level of specificity must be present." *S. Gas, Inc. v. Exxonmobil Oil Corp.*, No. 09-6236, 2016 WL 816748, at *8 (D.N.J. Feb. 29, 2016). Here, Plaintiffs' numerous examples supported by factual allegations are sufficient to meet that "minimum level." (*See, e.g.*, Compl. ¶ 117(f) (alleging that Defendant "forc[ed]" Plaintiffs "to purchase certain business equipment . . . that w[as] unnecessary" such as "mandat[ing] that [Plaintiffs] purchase two additional chocolate fountains")). Accordingly, Plaintiffs' "claim based on the imposition of unreasonable standards will survive the instant motion." *See, e.g.*, *Naik v. 7-Eleven, Inc.*, No. 13-4578, 2014 WL 3844792, at *14 (D.N.J. Aug. 5, 2014).

## IV. Conclusion

For the above reasons, the Court GRANTS-in-part and DENIES-in-part the motion:

- Counts one through Four are dismissed, *with prejudice*, under the Assignment Agreement;
- Counts Five through Eight, Eleven, and Twelve are dismissed, *without prejudice*; and
- Counts Nine and Ten may proceed.

If Plaintiffs can cure any deficiencies identified in this Opinion with amended claims, Plaintiffs may do so *within thirty days* in an amended third-party complaint. If Plaintiffs fail to do so, the Court may dismiss Counts Five through Eight, Eleven, or Twelve with prejudice.

An appropriate order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J**