Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GOLDEN CORRAL FRANCHISING SYSTEMS, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**WILLIAM J. SCISM; KAREN L. SCISM; and GC OF VINELAND, LLC,**<br><br>Defendants. | Civil Action No. 18-12879 (ES) (CLW)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Presently before the Court is the motion of Defendants William J. Scism, Karen L. Scism, and GC of Vineland, LLC, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (D.E. No. 64). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). As set forth below, the motion is DENIED.

**I.   BACKGROUND**[1]

Plaintiff Golden Corral Franchising Systems, Inc. ("Golden Corral") sues Defendants for breach of a Franchise Agreement to operate a Golden Corral restaurant for a fifteen-year period. (D.E. No. 59-1 ("Compl.") ¶¶ 9 & 24–26). Golden Corral alleges that Defendants violated the

---

[1]   For simplicity, and due to the procedural posture and arguments in the pending motion, the Court omits a discussion of the procedural history of this case involving (i) Defendants' claims against Golden Corral and its parent corporation; (ii) Bank United, NA's claims against Defendants; and (iii) First Chatham Bank's involvement in this case. For some of that history, the Court refers the reader to its prior Opinion granting in part and denying in part Golden Corral and its parent corporation's motion to dismiss. *See Scism v. Golden Corral Corp.*, No. 18-12879, 2019 WL 6522738 (D.N.J. Dec. 4, 2019). (*See also* D.E. No. 35).

1

Franchise Agreement by ceasing to operate the restaurant about 101 months prior to the expiration of the fifteen-year period. (*Id.* ¶¶ 7–9, 15–17 & 24–26). Golden Corral alleges that the breach was an "event of default" under the Franchise Agreement. (*Id.* ¶¶ 13 & 16). Consequently, Golden Corral gave Defendants fifteen days to cure the default by resuming operation of the restaurant. (D.E. No. 59-4, Notice of Default and Termination). Defendants did not reopen the restaurant, and Golden Corral terminated the Franchise Agreement as a result. (Compl. ¶ 17). Golden Corral now seeks consequential damages in the amount of $1,168,368. (*Id.* ¶ 20). Golden Corral seeks that amount for lost future royalty fees—that is, 4% of gross sales as a royalty fee, and 2.4% of gross sales as a marketing fee, calculated against the gross sales of the prior twelve months before default, for the remaining 101 months under the Franchise Agreement. (*Id.*; *see also* D.E. No. 59-2 ("Franchise Agreement") §§ IV.A & IV.B). Defendants move for judgment on the pleadings under Rule 12(c). (D.E. No. 64).

## II.   LEGAL STANDARD

Under Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed. When adjudicating such a motion, the court applies the same standard as that under Rule 12(b)(6). *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019); *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). That is, the Court must accept "all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). And the Court must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when

the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III.   DISCUSSION

Defendants argue that, because Golden Corral was technically the party that terminated the Franchise Agreement, Golden Corral is not entitled to lost future royalty fees based on the terms of the Franchise Agreement and under New Jersey contract law. (D.E. No. 64-1 ("Letter Br.") at 3–4; D.E. No. 71 ("Reply") at 3–5). In support, Defendants raise five arguments. The Court does not find those arguments persuasive.

*First*, Defendants argue that, under the terms of the Franchise Agreement, the royalty and marketing fees were "[i]n consideration of the franchise granted." (Letter Br. at 3–4 (quoting Franchise Agreement § IV.A)). Thus, according to Defendants, once Golden Corral terminated the Franchise Agreement, Defendants were no longer under a legal duty to pay such fees and therefore did not breach the Franchise Agreement by not paying such fees. (*Id.*).

But as Golden Corral points out, this argument appears to conflate the concept of breach with Golden Corral's demand for consequential damages. (D.E. No. 70 ("Opp. Br.") at 4). Golden Corral does not claim that Defendants breached the Franchise Agreement by failing to pay future royalty and marketing fees. Instead, Golden Corral claims an entitlement to future royalty and marketing fees that it would have received if Defendants did not separately breach the Franchise Agreement by abandoning the restaurant. (*Id.* ¶¶ 20 & 25–26). Under appropriate circumstances, New Jersey law—the law Defendants rely upon for their interpretation of the Franchise

3

Agreement[2]—allows a non-breaching party to recover such damages. *See Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C.*, 921 A.2d 1100, 1107 (N.J. 2007); *Donovan v. Bachstadt*, 453 A.2d 160, 166 (N.J. 1982); *see also Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) ("The traditional remedy for breach of contract is expectation damages."). Indeed, under New Jersey law, "a party who breaches a contract is liable for all of the natural and probable consequences of the breach of that contract." *Totaro, Duffy, Cannova & Co., L.L.C.*, 921 A.2d at 1107 (quoting *Pickett v. Lloyd's*, 621 A.2d 445, 454 (N.J. 1993)). "[T]he goal is 'to put the injured party in as good a position as . . . if performance had been rendered.'" *Id.* (quoting *Donovan*, 453 A.2d at 165). That position, New Jersey law holds, will "depend[] upon what the parties reasonably expected. It follows that the defendant is not chargeable for loss that he did not have reason to foresee as a probable result of the breach when the contract was made.'" *Id.* at 1108 (quoting *Donovan*, 453 A.2d at 165). Though "[p]roof of damages need not be done with exactitude," the plaintiff must "prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate." *Id.* (quoting *Lane v. Oil Delivery Inc.*, 524 A.2d 405, 409 (N.J. Super. App. Div. 1987)). Thus, New Jersey law permits the recovery of lost profits as a result of a breach of contract under appropriate circumstances, and whether those circumstances are present here depends on issues of fact that the Court cannot appropriately decide at this stage of the litigation.

*Second*, Defendants point out that gross sales for the remaining 101 months are necessarily $0, because "4% of $0 in gross sales after the restaurant ceased operations and 2.4% of $0 in gross

---

[2]    The Court notes that the Franchise Agreement has a choice-of-law clause specifying that "North Carolina law shall apply to any claim or controversy regarding the making, entering into, performance, interpretation, breach or termination of this Agreement." (Franchise Agreement § XXIV). Both parties have addressed this motion under New Jersey law, though Golden Corral notes that it is doing so only because it does not make a difference here. (Opp. Br. at 5 n.1).

sales after the restaurant ceased operations equates to a $0 in royalty payments purportedly owed to [Golden Corral]." (Letter Br. at 4).

But, as Golden Corral points out, this argument, too, appears to conflate the concepts of breach and damages. (Opp. Br. at 4–5). Indeed, Golden Corral is seeking a portion of lost profits that Defendants would have earned had they not breached the Franchise Agreement by abandoning the restaurant. The Court thus rejects this argument.

*Third*, Defendants argue that the Franchise Agreement expressly excludes royalty and marketing fees as recoverable damages. (Letter Br. at 4). Defendants argue that under the terms of the Franchise Agreement, they must, upon termination for default,

> promptly pay all sums owing to Franchisor and its subsidiaries and affiliates. In the event of termination for any default of Franchisee, such sums shall include all damages, costs, and expenses, including reasonable attorneys' fees, incurred by Franchisor as a result of the default, which obligation shall give rise to an[d] remain, until paid in full, a lien in favor of Franchisor against any and all of the personal property, furnishings, equipment, inventory, and fixtures owned by Franchisee and on all premises operated hereunder at the time of default.

(*Id.* (quoting Franchise Agreement § XV.H)). Defendants point out that the above language contains no reference to lost future franchise and marketing fees. (*Id.*).

However, the Franchise Agreement does not clearly exclude lost future royalty payments simply because it does not *expressly include* that precise language. *See Transportation Ins. Co. v. Am. Harvest Baking Co., Inc.*, No. 15-0663, 2018 WL 2215514, at *4 (D.N.J. May 15, 2018) ("Any limitations of a party's remedies for the other party's breach must be specifically agreed upon."). As Golden Corral points out, § XV.H of the Franchise Agreement indicates that, upon termination for any default of the franchisee, Golden Corral is entitled to "damages." (Opp. Br. at 8). Defendants have not argued that the word "damages" necessarily excludes "consequential

5

damages." Because the contract does not clearly exclude consequential damages as a remedy, the Court cannot enter judgment in Defendants' favor on that basis.

*Fourth*, Defendants argue that the initial franchise fee they paid to Golden Corral covered lost future royalty fees. (Letter Br. at 4). Defendants base that argument on § XV of the Franchise Agreement, which says,

> **The initial franchise fee** (and each portion thereof) described in this Section IV.A.1. **shall be** deemed fully earned and non-refundable **in consideration for**, among other things, the administrative and other expenses incurred by Franchisor in furnishing assistance and services to Franchisee and **for Franchisor's lost future royalties** or deferred opportunity to franchise others.

(*Id.* at 4 (quoting Franchise Agreement § XV)).

However, when reading the Franchise Agreement as a whole, Defendants interpretation is not so clearly correct to warrant entering judgment in their favor at this stage of the litigation. In interpreting a contract, the Court must endeavor to read the contract's provisions holistically. *See Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1169 (N.J. 2009) ("A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner."). And the upshot of Defendants' argument is that, even if *they* terminated the Franchise Agreement, Golden Corral would not be entitled to lost future royalties. That conclusion appears to be in tension with the provision of the Franchise Agreement that says Defendants must operate the restaurant for a fifteen-year period. Defendants' argument, if adopted, could plausibly render that provision toothless. *See id.* at 1169–70 ("If we were to read the PIP exclusion to provide a reasonable belief or knowledge requirement on the part of the injured person seeking PIP benefits, we would render those terms meaningless in the UM portion of the policy. We will not do that." (internal citation omitted)). Golden Corral thus offers a plausible interpretation of the Franchise Agreement—that is, "[a]t best, the application of the initial franchise fee goes to question of what

the quantum of Golden Corral's damages would be . . . ." (Opp. Br. at 7 n.2). The parties' competing interpretations counsel against ruling in favor of Defendants on this motion. *See Avidan v. Becker*, No. 11-3462, 2012 WL 359730, at *2 (D.N.J. Feb. 2, 2012); *Mercedes-Benz USA, LLC v. ATX Group, Inc.*, No. 08-3529, 2009 WL 2255727, at *8 (D.N.J. July 27, 2009).

*Fifth*, Defendants argue that, under New Jersey law, a "franchisor [may not] collect[] lost profits and future royalties from a franchisee where the franchisor has terminated the franchise agreement due to the franchisee's default." (Reply at 3). In support, they rely on two cases involving slightly similar facts, *Mister Softee, Inc. v. Amanollahi*, No. 14-1687, 2016 WL 5745105 (D.N.J. Sept. 30, 2016), and *Dunkin' Donuts, Inc. v. Arkay Donuts, LLC*, No. 05-0387, 2006 WL 2417241, at *5 (D.N.J. Aug. 21, 2006). (*Id.* at 3–5).[3] But these cases are distinguishable, and New Jersey law does not demand dismissal.

Both cases relied on the concept of proximate cause to deny lost future profits. In *Mister Softee*, 2016 WL 5745105, the court applied New York law to deny lost future royalty fees to a franchisor that terminated a franchise agreement after the franchisee changed locations of the franchise and stopped making payments to the franchisor. *Id.* at *5. The court relied heavily on the proposition that "the termination, and not the defendant's breach[,] directly deprived it of future royalties that would have been generated." *Id.* at *12. The franchisee, the court said, "faced a choice: terminate the Agreements, or remain within the Agreements and sue for the ongoing unpaid royalties." *Id.* at *13. In *Dunkin' Donuts, Inc.*, 2006 WL 2417241, the court denied lost future royalties to a franchisor that terminated a franchise after the franchisee failed to make certain payments. *Id.* at *5. The court explicitly rested its conclusion on cases from other jurisdictions that denied lost future royalties to franchisors because "the franchisees' breaches were not

---

[3] Because Defendants raised this argument for the first time in reply, Golden Corral did not have the opportunity to address these cases.

proximately connected to the lost future royalty payments, but rather, it was the franchisors' terminations that proximately caused the future losses." *Id.* (collecting cases).

Golden Corral alleges that Defendants abandoned the restaurant they promised to operate for fifteen years, that this breach of the Franchise Agreement was material, and that the breach proximately caused Golden Corral's damages in the form of lost future profits. (Compl. ¶¶ 25–26). These allegations suffice to plead proximate cause. Unlike the franchisees in *Mister Softee* and *Dunkin' Donuts, Inc.*, Defendants allegedly abandoned the franchise altogether, plausibly leaving Golden Corral with no choice but to terminate the Franchise Agreement. Under this factual scenario, and at this stage of the litigation, the Court finds persuasive the reasoning of Judge Rakoff, who rejected a similar argument that was premised on similar authority:

> Coraud's interpretation of this case law is mistaken. These cases do not stand for the proposition that formal termination of a Franchise Agreement is a prerequisite to a franchisor's recovery of lost profits. Rather, they apply the general rule that a party claiming damages must prove that the defendant's unlawful conduct was the proximate cause of those damages and then conclude that, if the franchisor's own decision to terminate the franchise agreement deprived it of its entitlement to those future royalty payments, the franchisee is not liable. Whatever the merits of that reasoning in cases where the franchisor terminates the agreement . . . it has little bearing on cases, as here, where it is the franchisee's own decision to cease operating that allegedly deprives a franchisor of future profits. Recognizing this, courts have generally permitted a franchisor to recover future royalties when the franchisee abandons the franchise.

*Coraud LLC v. Kidville Franchise Co., LLC*, 121 F. Supp. 3d 387, 398–99 (S.D.N.Y. 2015) (cleaned up).[4]

---

[4] In its reply, Defendants also cited *Red Roof Franchising, LLC v. Patel*, 877 F. Supp. 2d 124 (D.N.J. 2012), for the proposition that, "under settled franchise law, under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits." *Id.* at 132 (cleaned up). That case, however, is inapposite. There, the court rejected an argument that franchisees were excused from paying fees to the franchisor because, the franchisees had argued, the franchisor failed to honor certain of its obligations to advertise and market the franchise. *Id.* at 133–34. But despite the franchisor's breach, the franchisees "stopped paying fees but *continued to operate the franchise . . . and continued to receive the advantages of operating as a franchisee under the contract*." *Id.* at 134 (emphasis added). Golden Corral did not seek to take advantage of the contract's benefits in a similarly

8

## IV.     CONCLUSION

For the above stated reasons, the Court DENIES Defendants' motion for judgment on the pleadings.  (D.E. No. 64).  An appropriate Order will be entered.


Dated: October 1, 2021

*/s/Esther Salas*
Esther Salas, U.S.D.J.

---

impermissible way.  Golden Corral terminated the Franchise Agreement because, it alleges, Defendants abandoned the restaurant.  Now, for that breach, Golden Corral seeks lost future royalty fees as a form of consequential damages.  Defendants' reliance on *Red Roof Franchising, LLC* thus appears to conflate the concepts of breach and damages.